United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JATINDER SINGH, et al., | Case No. 23-cv-01435-CRB |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO COMPEL** |
| PAYWARD, INC. d/b/a KRAKEN, | |
| Defendant. | |

     Jatinder Singh and Sandeep Singh ("Plaintiffs") bring a putative class action suit against Payward, Inc., d/b/a Kraken ("Defendant" or "Kraken"), arguing that, in violation of the Illinois Biometric Information Privacy Act ("BIPA"), Defendant unlawfully collected, obtained, used, stored, and disclosed Plaintiffs' biometric identifiers, which Plaintiffs submitted in the course of creating Kraken cryptocurrency trading accounts.  See Compl. (dkt. 1) at 1.  Defendant now moves to compel arbitration, contending that Plaintiffs' claims are subject to Kraken's Terms of Service ("TOS"), which includes a valid, enforceable, and binding arbitration agreement between the parties.  See Mot. (dkt. 12) at 1.  In the alternative, Defendant moves to dismiss all four BIPA claims for either a lack of standing or failure to state a claim.  See id.

## I.     BACKGROUND

### A.     Parties

    Defendant Payward, Inc. is a Delaware corporation that operates an "app-based" platform, Kraken, that allows users to trade cryptocurrencies, cryptocurrency derivatives, and other virtual commodities.  See Compl. ¶ 1.

    Plaintiffs Jatinder Singh and Sandeep Singh are residents of Illinois who each

1    opened a Kraken cryptocurrency trading account, in March and July of 2021 respectively.

2    See id. ¶ 18; Mot. at 2.

3        **B.    Agreeing to Terms of Service**

4        To open a Kraken account, a user, among other things, must upload a copy of their

5    valid state-issued identification card and a picture of their face.  Compl. ¶ 3.  Kraken scans

6    the photograph and creates a biometric template of the user's face which is then compared

7    to the state-issued identification card to verify the user's identity.  Id. ¶ 4.  Before Kraken

8    obtains a user's biometric data, the user must first assent to Kraken's TOS and Privacy

9    Policy.

10        To sign up for a Kraken account, the user enters a name and password on the

11    website, provides their email, enters their state and country of residence, and checks a box

12    that states "By continuing I agree to the Terms of Service and Privacy Policy."  Davie

13    Decl. (dkt. 12-8) Ex. F (emphasis in original).  Within that sentence, the words "Terms of

14    Service" and "Privacy Policy" are distinguished from the surrounding grey font by a

15    purple font to indicate that it is a hyperlink.  Id.  To view the TOS, the user must click on

16    the "Terms of Service" hyperlink.  Davie Decl (dkt 12-2) ¶ 17.  While the user must check

17    the box that acknowledges agreement to the TOS to proceed with their account creation,

18    the user is not required to view the TOS.  Id. ¶¶ 6, 17–18.

19        Once the box is checked, the "Create Account" button changes from grey to purple,

20    which allows the user to proceed with the creation of their account.  Id. ¶¶ 17–19.

21        **C.    Arbitration Clause**

22        Kraken's TOS contains the following clauses pertinent to arbitration.  First, at the

23    top of the TOS, it reads:

24            PLEASE   READ   THESE   TERMS   OF   SERVICE
25            CAREFULLY.  BY CLICKING THE "CREATE ACCOUNT"
26            BUTTON OR BY ACCESSING OR USING THE SERVICES,
27            YOU  AGREE  TO  BE  LEGALLY  BOUND  BY  THESE
            TERMS OF SERVICE AND ALL TERMS INCORPORATED
28            BY REFERENCE.

2

United States District Court
Northern District of California

1  Davie Decl. (dkt. 12-4; dkt. 12-7) Ex. B & E at 2.[1]  Second, the "Summary of Terms of

2  Service" highlights important provisions of the agreement, including: "There are important

3  legal terms provided below in the complete Terms of Service, including your

4  indemnification responsibilities, our limitation of liability and warranty disclaimers, and

5  your agreement to arbitrate most disputes."  Id. at 3 (emphasis in original).  Finally, the

6  arbitration clause states:

> PLEASE READ THE FOLLOWING PARAGRAPH
> CAREFULLY BECAUSE IT REQUIRES YOU TO
> ARBITRATE DISPUTES WITH US AND IT LIMITS THE
> MANNER IN WHICH YOU CAN SEEK RELIEF.
>
> You and Payward agree to arbitrate any dispute arising from
> these Terms or your use of the Services, except for disputes in
> which either party seeks equitable and other relief for the alleged
> unlawful use of copyrights, trademarks, trade names, logos,
> trade secrets, or patents.  ARBITRATION PREVENTS YOU
> FROM SUING IN COURT OR FROM HAVING A JURY
> TRIAL.  You and Payward agree to notify each other in writing
> of any dispute within thirty (30) days of when it arises. . . . You
> and Payward further agree: (a) to attempt informal resolution
> prior to any demand for arbitration; (b) that any arbitration will
> occur in San Francisco, California; (c) that arbitration will be
> conducted confidentially by a single arbitrator in accordance
> with the rules of JAMS; and (d) that the state or federal courts
> in San Francisco, California have exclusive jurisdiction over any
> appeals of an arbitration award and over any suit between the
> parties not subject to arbitration.  Other than class procedures
> and remedies discussed below, the arbitrator has the authority to
> grant any remedy that would otherwise be available in court.
> Any dispute between the parties will be governed by these
> Terms and the laws of the State of California and applicable
> United States law, without giving effect to any conflict of laws
> principles that may provide for the application of the law of
> another jurisdiction.

[1] Ex. B references a screen shot of the TOS on Kraken's website as of July 10, 2021, the date Jatinder Singh created his Kraken account.  See Davie Decl. ¶¶ 9, 11.  Ex. E references a screen shot of the TOS on Kraken's website as of March 12, 2021, the date Sandeep Singh created his Kraken account.  See id. ¶¶ 13, 15.  Both screenshots contain the same language with respect to the referenced clauses.

Id. at 22.  The same paragraph also states that: "Whether the dispute is heard in arbitration or in court, you and Payward will not commence against the other a class action, class arbitration or representative action or proceeding."  Id.

### D.    Procedural History

On March 27, 2023, Plaintiffs brought this suit[2] against Defendant.  See Compl. Plaintiffs allege that Kraken "collects, stores, possesses, otherwise obtains, uses, and disseminates its users' biometric data [that Defendant obtains when the account is created] to, amongst other things, further enhance Kraken and its online 'app-based' platform. [Furthermore], Kraken wrongfully profits from the facial scans."  Id. ¶¶ 5–6.  Plaintiffs argue that these actions violate four provisions of BIPA that aim "to protect citizen's privacy interests in their biometric data."  Id. ¶¶ 8, 53–80.

On May 30, 2023, Defendant moved to compel arbitration, arguing that the arbitration agreement contained in the TOS governs the claims.  See Mot. at 7–10.  In the alternative, Defendant moves to dismiss the claims on the grounds that Plaintiffs do not have standing to bring their claims, and fail to state a claim.  Id. at 12–15.  The motion is fully briefed, and the Court held a hearing on August 18, 2023.  See Opp'n (dkt. 19); Reply (dkt. 20); Motion Hearing (dkt. 21).

## II.    LEGAL STANDARD

Contracts "evidencing a transaction involving commerce" are subject to the Federal Arbitration Act ("FAA").  See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 2).  The FAA establishes a strong federal policy favoring arbitration, providing that agreements to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; see also Blair v. Rent-A-Ctr., Inc., 928 F.3d 819, 825 (9th Cir. 2019) (citing id.).  "[A]ny party bound to an

---

[2] On January 21, 2023, Plaintiffs brought a similar suit in the Northern District of Illinois. Mot. at 4 (citing Martin Decl. ¶¶ 2–4).  Defendant demanded arbitration and Plaintiffs voluntarily dismissed the suit on March 19, 2023.  Id.

arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration." Magana v. DoorDash, Inc., 343 F. Supp. 3d 891, 898 (N.D. Cal. 2018) (citing 9 U.S.C. §§ 3–4).

When deciding whether to compel arbitration under the FAA, a court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp., 207 F.3d at 1130. If the answer to both questions is "yes," the court must enforce the arbitration agreement. See id. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

## III.    DISCUSSION

Defendant argues primarily that the parties agreed to delegate the issue of arbitrability to the arbitrator. See Mot. at 6. Plaintiffs counter that the Court, not an arbitrator, must decide the issue of arbitrability, that Plaintiffs did not unambiguously manifest assent to Defendant's TOS, and that even if they did, the arbitration agreement is unconscionable and therefore, unenforceable. See Opp'n 7–11. This order will discuss (A) the issue of contract formation; (B) Plaintiffs' assertion of unconscionability; and (C) the issue of arbitrability. Because the Court concludes that the parties have entered into a valid agreement that delegates the issue of arbitrability, it does not go on to reach Defendant's alternative motion to dismiss.

### A.    Contract Formation

Plaintiffs argue that they did not assent to the TOS and therefore that no contract was ever formed. Opp'n at 3–8. The Court will decide this issue rather than letting the arbitrator decide it. See Belyea v. GreenSky, Inc., No. 20-cv-1693-JCS, 2020 WL 3618959, at *3 (N.D. Cal. July 2, 2020) ("The question of contract formation, however, is not a delegable gateway issue.") (quoting Kum Tat Ltd. v. Linden Ox Pasture, LLC, 845 F.3d 979, 983 (9th Cir. 2017) ("[a]lthough challenges to the validity of a contract with an

United States District Court
Northern District of California

1  arbitration clause are to be decided by the arbitrator, challenges to the very existence of the

2  contract are, in general, properly directed to the court.")); <u>Galilea, LLC v. AGCS Mar. Ins.</u>

3  <u>Co.</u>, 879 F.3d 1052, 1056 (9th Cir. 2018) (court "must first make a threshold finding that

4  the document [evidencing an agreement] at east purports to be . . . a contract") (internal

5  quotation marks omitted).

6      As the party seeking to compel arbitration, Defendant "bears the burden of proving

7  the existence of an agreement to arbitrate by a preponderance of the evidence." <u>Lopez v.</u>

8  <u>Dave Inc.</u>, No. 22-cv-4160-VC, 2022 WL 17089824, at *1 (N.D. Cal., Nov. 21, 2022)

9  (internal quotation marks omitted). "Arbitration is a matter of contract." <u>Knutson v. Sirius</u>

10 <u>XM Radio Inc.</u>, 771 F.3d 559, 565 (9th Cir. 2014) (internal quotation marks omitted).

11 "[A] party cannot be required to submit to arbitration any dispute which he has not agreed

12 so to submit." <u>Id.</u> at 565 (internal quotation marks omitted). "In determining whether the

13 parties have agreed to arbitrate a particular dispute, federal courts apply state-law

14 principles of contract formation." <u>Berman v. Freedom Fin. Network, LLC</u>, 30 F.4th 849,

15 856 (9th Cir. 2022). The parties here agree that California law governs. Mot. at 7; Opp'n

16 at 3.

17     Plaintiffs argue that the website did not provide reasonably conspicuous notice of

18 the TOS and that Plaintiffs did not manifestly assent to the TOS. Opp'n at 5–8.[3] These are

19 indeed the two issues the Court must address. <u>See</u> <u>Sellers v. JustAnswer LLC</u>, 73 Cal.

20 App.5th 444, 466–71 (2021); <u>see also</u> <u>Berman</u>, 30 F.4th at 856 (". . . an enforceable

21 contract will be found based on an inquiry notice theory only if: (1) the website provides

22 reasonably conspicuous notice of the terms to which the consumer will be bound; and (2)

23 the consumer takes some action, such as clicking a button or checking a box, that

24 unambiguously manifests his or her assent to those terms.") (citing <u>Meyer v. Uber Techs.</u>,

25

26  ---

27 [3] Plaintiffs contend that this is a "sign-in wrap agreement," <u>id.</u> at 4, while Defendant contends that it is a "clickwrap agreement," Reply at 3. The Court is inclined to agree with Defendant on this point (as Kraken users must click that they agree), but the precise label does not matter; so long as the agreement gave reasonably conspicuous notice and Plaintiffs manifestly assented, there was an agreement.

28

1   Inc., 868 F.3d 66, 74 (2d Cir. 2017); Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1173
2   (9th Cir. 2014)).

3       There was conspicuous notice here.  To open a Kraken account, Plaintiffs had to
4   check a box that states, "By continuing I agree to the Terms of Service and Privacy
5   Policy."  Davie Decl. Ex. F (emphasis in original).  Within that sentence, the words
6   "Terms of Service" and "Privacy Policy" are the same size as the rest of the writing but are
7   distinguished from the surrounding grey font, and from the white background, by a purple
8   font to denote a hyperlink.  Id.  There is little other text on the page to draw the consumer's
9   attention away from the hyperlinks, and the hyperlinks are the only colored text on the
10  page.  Id.; see also Peter v. DoorDash, Inc., 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020)
11  (plaintiffs on notice where "text contrasts clearly with the background and is plainly
12  readable").  To view the TOS, the user can click on the "Terms of Service" hyperlink.
13  Davie Decl. ¶ 17.  This notice is conspicuous and varies from the notice in Berman, where
14  the link to the terms and conditions to which the user allegedly agreed was "printed in a
15  tiny gray font considerably smaller than the font used in the surrounding website elements
16  . . . barely legible to the naked eye."  30 F.4th at 856–57.

17      There was also an unambiguous manifestation of agreement here.  Defendant's
18  webpage required the consumer to click on "By continuing I agree to the Terms of Service
19  and Privacy Policy" before moving on to open an account.  Davie Decl. Ex. F.  Once the
20  "By continuing I agree to the Terms of Service and Privacy Policy" box is checked, the
21  "Create Account" button changes from grey to purple, which allows the user to proceed
22  with the creation of their account.  Davie Decl. Ex. F ¶¶ 17–19.  A user cannot proceed to
23  creating an account without first clicking on the box that says that they agreed to the TOS.
24  Id.  This is far superior to the website in Berman, which did not state that clicking the
25  "Continue" button manifested assent to the terms and conditions.  See 30 F.4th at 858
26  ("This notice defect could easily have been remedied by including language such as, 'By
27  clicking the Continue >> button, you agree to the Terms & Conditions.'"); see also Sellers,
28  73 Cal. App.5th at 453 (consumer clicked "Start my trial" and only "in very small print

further down the page" did the webpage state: "'By clicking 'Start my trial' you indicate that you agree to the <u>terms of service</u> and are 13+ years old.'").

Accordingly, Plaintiffs here agreed to the TOS.  See <u>Alfia v. Coinbase Global, Inc.</u>, No. 21-cv-8689-HSG, 2022 WL 3205036, *2 (N.D. Cal. July 22, 2022) (holding, where "Plaintiff had to click a 'check box' next to the language 'I certify that I am 18 years of age or older, and I agree to the User Agreement and Privacy Policy,' with both agreements accessible via hyperlink," that plaintiff had "clear notice . . . and took physical action to manifest his assent").

### B.    Unconscionability

Plaintiffs also argue that the arbitration clause is unconscionable.  Opp'n at 8–11.

Under California law, a contract is unenforceable when it is both procedurally and substantively unconscionable:

> [T]he prevailing view is that procedural unconscionability and substantive unconscionability need not both be present to the same degree: Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation . . . in proportion to the greater harshness or unreasonableness of the substantive terms themselves.

<u>Nagrampa v. MailCoups, Inc.</u>, 469 F.3d 1257, 1280 (9th Cir. 2006) (internal quotation marks omitted) (quoting <u>Armendariz v. Found. Health Psychcare Servs.</u>, Inc., 24 Cal.4th 83, 114 (2000)).

### 1.    Procedural Unconscionability

A determination of procedural unconscionability involves the analysis of two factors: (1) oppression; and (2) surprise.  <u>Id.</u> at 1280.  Oppression is found when there is such an inequality in bargaining power between two parties that there is no actual negotiation and a lack of meaningful choice.  <u>Id.</u>  Surprise is found when the "supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them."  <u>Id.</u> (internal quotation marks omitted).

Plaintiffs' only argument for procedural unconscionability is that the TOS is a contract of adhesion, giving Plaintiffs "no ability to negotiate the terms."  Opp'n at 8.

United States District Court
Northern District of California

1    California courts consider contracts of adhesion procedurally unconscionable to at least a

2    minimal degree due to a lack of bargaining power.  Bridge Fund Cap. Corp. v. Fastbucks

3    Franchise Corp., 622 F.3d 996, 1004 (9th Cir. 2010).  However, California courts only

4    refuse to enforce contracts of adhesion if they are "unduly oppressive."  Armendariz, 24

5    Cal.4th at 113.  The TOS has some degree of procedural unconscionability.  But see

6    Darnaa, LLC v. Google, Inc., No. 15-cv-3221-RMW, 2015 WL 7753406, *2 (N.D. Cal.

7    Dec. 2, 2015) ("court finds the level of procedural unconscionability to be slight, as

8    plaintiff does not lack meaningful choice."); Reply at 7 (Defendant is one of numerous

9    companies offering cryptocurrency exchange services).

               **2.       Substantive Unconscionability**

11          Substantive unconscionability occurs when the terms of the agreement are one-

12   sided.  Little v. Auto Stiegler, Inc., 29 Cal.4th 1064, 1071 (2003).  A court will refuse to

13   enforce an agreement, rather than sever the offending unconscionable provision, where the

14   agreement is "permeated" with unconscionability.  Armendariz, 24 Cal.4th at 122.

15          Plaintiffs argue that the arbitration agreement is substantively unconscionable.  See

16   Opp'n at 9–11.  But the provisions they highlight are almost entirely in the TOS as a whole

17   and not in the actual arbitration provision, let alone the asserted delegation language in the

18   arbitration provision.  See id.  "Where a plaintiff's unconscionability challenge is directed

19   not to the delegation provision specifically, but, rather, to the arbitration agreement as a

20   whole, the Court must enforce the delegation provision and leave such challenges for the

21   arbitrator."  Aggarwal et al. v. Coinbase, Inc., No. 22-cv-4829-JSW, 2023 WL 4935003, at

22   *9 (N.D. Cal. Aug. 2, 2023) (cleaned up) (quoting Pearl v. Coinbase Glob., Inc., No. 22-

23   cv-3561-MMC, 2023 WL 1769190, at *7 (N.D. Cal. Feb. 3, 2023) (quoting Rent-A-Ctr.,

24   West, Inc. v. Jackson, 561 U.S. 63, 72 (2010) and Brennan v. Opus Bank, 796 F.3d 1125,

25   1133 (9th Cir. 2015) (where no argument "specific to the delegation provision" is made,

26   unconscionability challenge is "for the arbitrator")).

27          The only substantive unconscionability challenge that Plaintiffs make that actually

28   pertains to the arbitration clause is the 30-day notice provision, which Plaintiffs argue

                                           9

shortens the statute of limitations for Defendant's consumers to bring this type of claim against it from five years to 30 days.  <u>See</u> Opp'n at 9–10.  This would be problematic.  <u>See</u> <u>Martinez v. Master Protection Corp.</u>, 118 Cal. App. 4th 107, 117 (2004) (arbitration agreement requiring assertion of claims within six months rather than "significantly longer" statute of limitation was substantively unconscionable).  However, Defendant is not availing itself of the notice provision here, or claiming that Plaintiffs' case is untimely.  <u>See</u> Reply at 9 (insisting that that provision "does not provide for forfeiture of a claim" and is instead a means of "informal resolution").  Defendant reiterated that point at the motion hearing.  Combined with the moderate degree of procedural unconscionability, the 30-day notice provision is not enough to render the entire arbitration agreement unconscionable.

### C.    Arbitrability

The final issue, and the biggest one, is whether this Court or the arbitrator should decide whether the case is arbitrable.

#### 1.    Governing Law

In order to determine who decides the question of arbitrability, the Court must first address the applicable law that governs the dispute.  "[F]ederal law governs the arbitrability question by default because the Agreement is covered by the FAA" except where the parties have "clearly and unmistakably designated that nonfederal <u>arbitrability</u> law applies."  <u>Brennan</u>, 796 F.3d at 1129 (emphasis in original) (citing <u>Cape Flattery Ltd.</u> <u>v. Titan Maritime</u>, 647 F.3d 914, 921 (9th Cir. 2011)).

The arbitration agreement within the TOS here states that "[a]ny dispute between the parties will be governed by these Terms and the laws of the State of California and applicable United States law, without giving effect to any conflict of laws principles that may provide for the application of the law of another jurisdiction."  Davie Decl. Ex. B at 22.  The agreement therefore does not explicitly state whether California or federal law governs the question of arbitrability.  Because there is ambiguity as to whether the question of arbitrability is governed by California law, there is not "clear and unmistakable evidence that the parties agreed to apply non-federal arbitration law."  <u>See</u> <u>Shierkatz</u>

RLLP v. Square, Inc., No. 15-cv-02202-JST, 2015 WL 9258082, at *5 (N.D. Cal. Dec. 17, 2015) (citing Brennan, 796 F.3d at 1129); see also Cape Flattery Ltd., 647 F.3d at 921 (holding that "courts should apply federal arbitrability law absent 'clear and unmistakable evidence' that the parties agreed to apply non-federal arbitrability law.") (citing Kaplan, 514 U.S. at 944). Thus, the Court applies federal arbitrability law.

### 2. Who Decides Arbitrability

#### a. Delegation

The "gateway" question of arbitrability asks "whether the parties have submitted a particular dispute to arbitration." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). The parties can agree that this question, like any other, will be decided by an arbitrator. See Rent-A-Ctr., 561 U.S. at 68–69; see also Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524 (2019) ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."). However, "the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." Oracle Am., Inc., v. Myriad Grp. A.G., 724 F.3d 1069, 1072 (9th Cir. 2013). Courts should presume that they determine arbitrability "'[u]nless the parties clearly and unmistakably provide otherwise.'" Howsam, 537 U.S. at 83 (quoting AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 649 (1986)). Clear and unmistakable evidence can be "a course of conduct demonstrating assent . . . or . . . an express agreement." Momot v. Mastro, 652 F.3d 982, 988 (9th Cir. 2011) (omissions in text). Silence or ambiguity must be construed in favor of the court deciding the issue of arbitrability. Kaplan, 514 U.S. at 945–47.

Defendant argues that the parties agreed to delegate the issue of arbitrability to an arbitrator, noting that the TOS incorporates the JAMS rules into its arbitration agreement, Mot. at 6; Davie Decl. ¶¶ 11, 15, Exs. B &E § 23 ("arbitration will be conducted confidentially by a single arbitrator in accordance with the rules of JAMS"), and those rules provide that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which

United States District Court
Northern District of California

1   Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator.  The

2   Arbitrator has the authority to determine jurisdiction and arbitrability issues as a

3   preliminary matter," Mot. at 6–7; Martin Decl. (dkt. 12-12) Ex. I, Rule 11(b).  Defendant

4   contends that by incorporating the JAMS rules into the agreement, "the parties have

5   'clearly and unmistakably' delegated the issue of arbitrability to the arbitrator."  Mot. at 7.

6        Plaintiffs respond that the "mere incorporation" of the JAMS rules does not show

7   "clear and unmistakable evidence" of delegating the question of arbitrability to the

8   arbitrator.  Opp'n at 2.  Plaintiffs insist that where a contract "includes a severability clause

9   stating a court of competent jurisdiction may excise an unconscionable provision," the

10   parties have not clearly and unmistakably delegated the question of arbitrability to the

11   arbitrator.  Id. (citing Najarro v. Superior Court, 70 Cal.App.5th 871, 880 (2021)).

12        The Ninth Circuit held in Brennan "that incorporation of the [American Arbitration

13   Association, or AAA] rules constitutes clear and unmistakable evidence that contracting

14   parties agreed to arbitrate arbitrability."  796 F.3d at 1130; see also Oracle Am., Inc., 724

15   F.3d at 1074 ("Virtually every circuit to have considered the issue has determined that

16   incorporation of the American Arbitration Association's (AAA) arbitration rules

17   constitutes clear and unmistakable evidence that the parties agreed to arbitrate

18   arbitrability.").  Incorporation of the JAMS rules is no different.  See Caviani v. Mentor

19   Graphics Corp., No. 19-cv-01645-EMC, 2019 WL 4470820, at *4–5 (N.D. Cal. Sept. 18,

20   2019).  One notable limitation of Brennan, though, is that the Ninth Circuit restricted its

21   holding to contracts between sophisticated parties.  796 F.3d at 1130.  Even so, the court

22   made clear that it did "not foreclose the possibility that this rule could also apply to

23   unsophisticated parties or to consumer contracts."  Id.  In fact, the court pointed out that

24   "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes

25   clear and unmistakable evidence of the parties' intent do so without explicitly limiting that

26   holding to sophisticated parties or to commercial contracts."  Id. at 1130–31.

27        Since Brennan, in the absence of a Ninth Circuit case involving clearly

28   unsophisticated parties, district courts within the Ninth Circuit have been split as to

whether the incorporation of the AAA or JAMS rules into a contract is clear and unmistakable assent by all parties, sophisticated or not, to arbitrate arbitrability. See Eiess v. USAA Fed. Sav. Bank, 404 F. Supp. 3d 1240, 1252–53 (N.D. Cal. 2019) (explaining split).

A number of courts in this district have concluded that incorporation of the AAA or JAMS rules is sufficient for a court to find intent to delegate arbitrability, regardless of the parties' sophistication. See, e.g., Bazine v. Kelly Servs. Global, LLC, No. 22-cv-7170-BLF, 2023 WL 4138252, at *6 (N.D. Cal. June 21, 2023) (siding with courts holding that incorporation of rules is adequate regardless of sophistication of parties); Luckert v. Tesla Energy Ops., Inc., No. 21-cv-3027-VC, 2021 WL 3721967 (N.D. Cal. Aug. 5, 2021) (holding in one-paragraph order that incorporating JAMS rules delegates arbitrability); Gerlach v. Tickmark, Inc., No. 21-cv-2768-YGR, 2021 WL 3191692, at *4 (N.D. Cal. July 28, 2021) ("the greater weight of authority" holds that incorporating rules is enough to delegate).[4]

The Court agrees that Brennan supports so holding, and concludes herein that the alternative requires impractical line-drawing.[5]  Moreover, the Court observes that Plaintiffs

---

[4] Interestingly, in Gutierrez v. FriendFinder Networks Inc., No. 18-cv-5918-BLF, 2019 WL 1974900, at *9 (N.D. Cal. May 3, 2019), Judge Freeman held that the parties had delegated arbitrability where—without discussing the sophistication of the parties—the contract incorporated JAMS and AAA rules and said that "any claim, dispute, or controversy . . . between you and us. . . relating to these Terms, its interpretation, or the breach, termination, or validity hereof . . . shall be resolved exclusively and finally by binding arbitration."  Judge Freeman cited to the Ninth Circuit in Momot, 652 F.3d at 988, which held that language stating that "the validity or application of any of the provisions of the arbitration clause" were subject to arbitration was a clear and unmistakable delegation of arbitrability. Gutierrez, 2019 WL 1974900, at *9.  Here, the arbitration clause does not use the word "validity," but does state that "You . . . agree to arbitrate any dispute arising from these Terms" and that "arbitration will be conducted by . . . JAMS," Davie Decl. Ex. B ¶ 23.

[5] No doubt, reasonable jurists have reached the opposite conclusion.  See, e.g., Hooper v. Jerry Ins. Agency, LLC, No. 22-cv-4232-JST, 2023 WL 3992130, at *7 (N.D. Cal. June 1, 2023) ("This Court has twice before declined to extend Brennan to a case involving an unsophisticated party"); Eiess v. USAA Federal Savings Bank, 404 F. Supp. 3d 1240, 1252–53 (N.D. Cal. 2019) (for incorporation of rules to mean delegation, parties should be sophisticated).  Indeed, this Court recently declined to disregard sophistication in Flora v. Prisma Labs, Inc., No. 23-cv-680-CRB, 2023 WL 5061955, at *4–5, n.7 (N.D. Cal. Aug. 8, 2023), where one of the plaintiffs was a minor.

United States District Court
Northern District of California

1    here—cryptocurrency traders, <u>see</u> Compl. ¶¶ 1–2—<u>do not assert that they are</u>

2    <u>unsophisticated</u>.  They do not object to the Court interpreting the TOS's incorporation of

3    the JAMS rules as a delegation of arbitrability based on any claimed lack of sophistication.

4    Rather, they hang their hats on a novel argument about the severability clause, discussed

5    next.  <u>See</u> Opp'n at 2.

6                        **b.    Severability Clause**

7            Plaintiffs contend that the incorporation of the JAMS rules does not clearly

8    evidence an agreement to delegate arbitrability because:

9                    First, the severability clause states that "[t]he invalidity or
                     unenforceability of any of these Terms shall not affect the
10                   validity or enforceability of any other of these Terms, all of
                     which shall remain in full force and effect."  TOS, ¶ 24.4.
11                   Second, the arbitration agreement states "that the <u>state or</u>
                     <u>federal courts</u> in San Francisco, California have <u>exclusive</u>
12                   <u>jurisdiction</u> over any appeals of an arbitration award <u>and over</u>
                     <u>any suit between the parties not subject to arbitration</u>."  TOS, ¶
13                   23, italics added.  The combination of the severability clause
                     and [the] term in the arbitration agreement conclusively allows
14                   this Court to determine the gateway question.  Even if the
                     severability clause and the term in the arbitration agreement do
15                   not conclusively give this Court the power to determine
                     enforceability, those terms, at the very least, create ambiguity
16                   as to who decides the threshold issue.

17    Opp'n at 2.  This argument fails as an initial matter because, as Defendant reasons, the

18    "arbitrability provision does not include a severability clause."  Reply at 2.

19            Moreover, the cases that Plaintiffs rely on for their severability clause argument are

20    distinguishable.  <u>See id.</u> (citing to <u>Najarro</u>, 70 Cal.App.5th at 880; <u>Hartley v. Sup. Ct.</u>, 196

21    Cal.App.4th 1249, 1257–58 (2011); <u>Parada v. Superior Court</u>, 176 Cal.App.4th 1554, 1566

22    (2009); <u>Baker v. Osborne Dev. Corp.</u>, 159 Cal.App.4th 884, 893–94 (2008)).  In <u>Najarro</u>,

23    the parties' agreement included a severability clause that said ". . . if the arbitrator or any

24    judge of competent jurisdiction determines that any provision of the JAMS Rules or this

25    [a]greement is illegal, invalid, or unenforceable, such provisions shall be severed . . . ."  70

26    Cal.App.5th at 877–78.  Because the severability clause mentioned a court as well as an

27    arbitrator severing the agreement, there was no clear and unmistakable delegation to the

28

United States District Court
Northern District of California

arbitrator.  Id. at 880.  In Hartley, the agreement provided that there was no waiver (no bar to seeking relief from a court) for equitable relief, and the severability clause stated that "In the event that any provision of this Agreement shall be determined by a trier of fact of competent jurisdiction to be unenforceable in any jurisdiction, the remainder of this Agreement shall remain binding. . . ."  196 Cal.App.4th at 1257 (emphasis in original). The court explained that those provisions left open the possibility that "the court has authority to decide whether an arbitration provision is unenforceable."  Id. at 1258.  In Parada, the contract included a severability clause that said "[i]n the event that any provision of this Agreement shall be determined by a trier of fact of competent jurisdiction to be unenforceable in any jurisdiction . . ." while the arbitration provisions referred to arbitration "heard by and determined by a panel of three (3) arbitrators."  176 Cal.App.4th at 1566 (emphasis in original).  The court concluded that "Use of the term 'trier of fact of competent jurisdiction' instead of 'arbitration panel' or 'panel of three (3) arbitrators' suggests the trial court also may find a provision, including the arbitration unenforceable." Id. at 1566.  And in Baker, because the severability clause referred to the possibility that "any provision of this arbitration agreement shall be determined by the arbitrator or by any court to be unenforceable," it "acknowledge[d] the possibility that enforceability issues will be decided, not by the arbitrator, but rather by the court."  159 Cal.App.4th at 891 (emphasis in original).

Here, the severability clause does not mention a judge, as in Najarro, or a court, as in Baker, or a "trier of fact of competent jurisdiction," as in Hartley or Parada.  It simply says: "The invalidity or unenforceability of any of these Terms shall not affect the validity or enforceability of any other of these Terms, all of which shall remain in full force and affect."  Davie Decl. Ex. B ¶ 24.4.  That provision leaves no opening for the notion that a judge will be the one determining severability.

In order to try to analogize the TOS here with the agreements found to lack clear delegation to an arbitrator in Najarro, Hartley, Parada and Baker, Plaintiffs assert that the arbitration provision here mentions courts: it says "the state or federal courts in San

United States District Court
Northern District of California

Francisco, California have exclusive jurisdiction over any appeals of an arbitration award and over any suit between the parties not subject to arbitration." <u>See</u> Opp'n at 2 (citing Davie Decl. Ex. B ¶ 23).  Plaintiffs assert that "[t]he combination of the severability clause and [the] term in the arbitration agreement [about courts] conclusively allows this Court to determine the gateway question." <u>Id.</u>  But paragraph 23, the arbitration provision from which that language about courts comes, begins by saying: "PLEASE READ THE FOLLOWING PARAGRAPH CAREFULLY BECAUSE <u>IT REQUIRES YOU TO ARBITRATE DISPUTES WITH US</u> AND IT LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF."  Davie Decl. Ex. B ¶ 23 (emphasis added).  It then states: "You and Payward agree to <u>arbitrate any disputes arising from these Terms or your use of the Services</u>, except for disputes in which either party seeks <u>equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets or patents</u>.  ARBITRATION <u>PREVENTS YOU FROM SUING IN COURT</u> OR FROM HAVING A JURY TRIAL." <u>Id.</u> (emphasis added).  That language is not ambiguous.  It quite clearly explains that unless a plaintiff is seeking "equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets or patents," that plaintiff will have to arbitrate his or her claim.  The later line in this provision stating that "state or federal courts in San Francisco, California have exclusive jurisdiction over any appeals of an arbitration award or over any suit between the parties not subject to arbitration" does not change anything; it simply limits the courts' involvement to appeals of arbitration awards and cases where a plaintiff is seeking "equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets or patents."  No one reading the arbitration agreement and the severability clause together would reasonably think that—if they brought any kind of suit other than one seeking "equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets or patents"—a court could sever terms in the arbitration agreement or decide the issue of arbitrability.

Plaintiffs' argument based on the severability clause is therefore unconvincing.

16

1    Accordingly, the Court concludes that the parties entered into a valid agreement,

2 and that that agreement delegates the question of arbitrability to an arbitrator.

3 **IV.    CONCLUSION**

4    For the foregoing reasons, the Court GRANTS the motion to compel and STAYS

5 the action pending arbitration.  The Court further DISMISSES the class claims.[6]

6    **IT IS SO ORDERED.**

7    Dated: August  22 , 2023



8                                    CHARLES R. BREYER
                                     United States District Judge

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  [6] Defendant moved to dismiss the class claims, arguing that the arbitration clause includes
a class action waiver.  See Mot. at 3–4.  Plaintiffs do not oppose this.  See Opp'n; Reply at
27 14–15.  And indeed, the arbitration provision bars class actions.  See Davie Decl. Ex. B ¶
23 ("Whether the dispute is heard in arbitration or in court, you and Payward will not
28 commence against the other a class action, class arbitration or representative action or
proceeding.").